**In re CELLULAR COMMUNICATIONS INTERNATIONAL, INC. SHAREHOLDERS LITIGATION.**

**C.A. No. 16866.**

Court of Chancery of Delaware, New Castle County.

Submitted: Dec. 22, 1999.

Decided: Jan. 6, 2000.

Joseph A. Rosenthal, and Norman M. Monhait, of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Stanley D. Bernstein, of Bernstein, Liebhard & Lifshitz, LLP, New York City, Schiffrin & Barroway, LLP, Bala Cynwyd, Pennsylvania, Law Offices of Todd J. Krouner, New York City, for Plaintiffs.

Randolph K. Herndon, of Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, Stephen W. Greiner, of Willkie, Farr & Gallagher, New York City, for Defendants.

**OPINION**

LAMB, Vice Chancellor.

**I.**

Before me is the parties' motion to approve a proposed settlement of these consolidated cases, together with an application for an award of fees and expenses in the amount of $1,000,000. After reviewing the record, including the supplemental submissions made by the parties following the December 15, 1999 settlement hearing, I conclude that the settlement is not supported by adequate consideration and, thus, cannot be approved.

**II.**

The principal claim in the litigation challenged the price paid in a two-step transaction to acquire all of the outstanding shares of Cellular Communications International, Inc., a Delaware corporation. After the cases were filed, the party seeking to acquire the shares raised the price from $65.75 to $80.00 per share.

Although the revised offer was not conditioned in any way on the settlement of the litigation, the parties sought to predicate a settlement of all of the claims in the litigation exclusively (or nearly so) on the basis of the previously announced increase in price.[1] An agreement in principle to settle was reached orally several days before the first-step tender offer closed. A written memorandum of understanding memorializing the terms of that agreement was executed after the both the tender offer and the second-step merger closed. A written settlement agreement was executed some six months later. The settlement hearing took place nearly 11 months after the purported settlement was reached and nine months after the transactions at issue closed.

The question raised by the sequence of events in this case is whether there is adequate consideration to support the dismissal with prejudice of the claims asserted in the litigation and the concomitant release. To put it differently, was there in fact an agreement, adequately supported by mutual consideration, to settle the price claims or did those claims become moot as a result of the acquirer's actions?

In these circumstances, I conclude that there was no settlement. The Stipulation of Settlement provides that, "in consideration of the modification of the Revised Transaction price from $65.75 to $80.00 per share" the litigation shall be dismissed with prejudice to all members of the class and all claims belonging to members of the class arising out of the transaction shall be released. Yet, that price increase was decided upon and announced before any agreement to settle the litigation was reached. Even the first, tentative agreement to settle came some days or weeks later. In the circumstances, the price increase can hardly have been a *quid pro quo* for the agreement to settle. Since none of the memorandum of understanding, the Stipulation of Settlement, or the notice of settlement reflects the existence of any other consideration, the settlement cannot be approved.

The parties have been unable to cite a single case where a settlement was approved in analogous circumstances. In their supplemental letter memorandum of December 22, 1999, the defendants discuss a series of approved settlements in which, it appears, the written memorandum of understanding was executed *after* a price increase that served as the basis for the settlement.[2] Defendants quite candidly concede, however, that in each of these cases, "the agreement to settle was reached at the same time as the increase in the consideration."[3] This is a crucial factual distinction that deprives those other settlements of any precedential value because, in those cases, the increase in price was offered as consideration for the

---

1. The December 21, 1999 Affidavit of Stanley D. Bernstein, Esquire, in discussing preliminary settlement negotiations with defense counsel, states "[w]e also generally discussed that plaintiffs would be afforded the opportunity to review and make any comments with respect to all future disclosure documents concerning the proposed transactions. . . ." Mr. Bernstein's affidavit further states that he "did not anticipate that there would be disclosure issues of major significance which would need to be addressed" and that, while he later reviewed the draft documents, he made no substantive comments. These matters are addressed in neither the memorandum of understanding nor the Stipulation of Settlement and I will not consider them as evidence of consideration to support the settlement.

2. These include *In re Rust Int'l, Inc Shareholders Litig.*, Del. Ch., C.N. No. 14022, Allen, C. (Sept. 16, 1996); *Chemical Waste Management, Inc. Shareholders Litig.*, Del. Ch., C.A. No. 13638, Steele V.C. (Sept. 8, 1995); *In re Knoll, Inc. Shareholders Litig.*, Del. Ch., C.A. No. 17052, Strine, V.C. (Nov. 3, 1999),; *In re BET Holdings, Inc. Shareholders Litig.*, Del. Ch., C.A. No. 15921, Jacobs, V.C. (July 28, 1998),; and *In re Calgene, Inc. Shareholders Litig.*, Del. Ch., C.A. No. 15487, Lamb, V.C., (Jan. 15, 1998),.

3. I note with gratitude the high professionalism of defendants' submission in disclosing facts relating to the circumstances of those settlements that do not appear of record but, nonetheless, bear directly on the analysis of the issue presented.

agreement to settle. The same is not true in this case, where the increase in price was a *fait accompli* before any agreement to settle was reached, or even discussed. In the circumstances, it cannot serve as a basis upon which to settle the case and order the attendant dismissal and release.

Finally, I reject defendants' argument that principles of quasi-contract support the conclusion that there was a settlement here. Defendants argue as follows:

> When the price increase was made, [the acquirer was] aware of the claims asserted in the Action (seeking additional consideration for CCI shares) and that increasing the consideration would address the principal claims in those actions. Counsel for [the acquirer] and Plaintiffs thereafter discussed whether the amount of the price increase would be adequate to satisfy Plaintiffs. Under quasi-contractual principles, a contract was formed. *See Marta v. Nepa,* Del. Supr., 385 A.2d 727, 729 (1978) (recovery permitted under quasi-contract where (1) "the party performing the services expected the recipient of the benefit to pay for them" and (2) "the services were performed under circumstances which would notify the recipient that the performer of the services expected to be paid") (citing 5 *Williston on Contracts* § 1575; *Bellanca Corp. v. Bellanca,* Del. Supr., 169 A.2d 620 (1961)).

This argument could only make sense if, as a corollary, it could be argued that plaintiffs were *obligated* to settle on the basis of the price increase. After all, the contract claimed to exist was between the acquirer and the plaintiffs, not the acquirer and the court. Of course, plaintiffs counsel do not assent to this proposition. Also, there is no suggestion in the record that either they or defense counsel thought plaintiffs were bound to settle on the basis of the price increase. On the contrary, the record shows that plaintiffs counsel attempted to negotiate a higher price and only agreed to settle on the basis of the $80 price offered when they were told that acquirer would not, under any circumstance, pay more. Thus, it is clear the acquirer had no expectation based on the actions or words of plaintiffs or their counsel that a price increase to $80 per share would necessarily settle the case.[4]

Indeed, I cannot imagine that, in any other circumstance, either the defendants or the plaintiffs would suggest that the independent action of an acquirer, in raising its offering price, would result in a binding contract to settle pending stockholder litigation attacking the adequacy of the price. Depending on the nature of the litigation and the amount of the increase, such action might moot the claims or it might only raise the floor on plaintiffs' demands. It could never, however, result in an enforceable agreement to settle the case. To hold otherwise would do great harm to class action litigation practice.

### III.

Plaintiffs counsels' entitlement to a fee is a different matter. Although I will not award a fee in connection with the disapproved settlement, it appears from the record that a basis may exist for them to petition for an award of fees in accordance with the rule most recently discussed by the Delaware Supreme Court in *United Vanguard Fund, Inc. v. Takecare, Inc.*[5] That case and others recognize the propriety of a fee award to plaintiffs counsel in actions rendered moot by acts of the defendants that benefit the class and are causally related to the litigation.

 On the assumption that the plaintiffs will choose to proceed in this fashion, it is appropriate to address a few related issues. As recognized in *In re Advanced*

---

4. Moreover, there is no evidence that plaintiffs counsel had ever communicated a demand that the price be raised to $80 or told counsel for the acquirer that a settlement could be reached if the price were raised to that level.

5. Del.Supr., 693 A.2d 1076 (1997).

*Mammography Systems, Inc. Shareholders Litigation,*[6] when an action is to be dismissed as moot, the defendants (or here the acquirer) may agree, as a matter of business judgment, to pay money to resolve a threatened or pending fee petition. Ordinarily, notice of the decision to dismiss and the terms of the fee arrangement must be disclosed to the class and a hearing held. As Chancellor Allen said in that case, the purpose of the hearing "would be to afford the class an opportunity to show that the case really is not moot but that the proposed payment to counsel is the only motivation for the dismissal on that ground."[7] In this case, I am inclined to the view that no further notice will be required before this action can be dismissed on grounds of mootness and a fee of an agreed upon amount is paid. Full notice of the proposed settlement was given, and no stockholder appeared to object either to the dismissal of the claims or the application for fees. For the same reasons, my review of any agreed upon fee award will be quite limited in scope, as

there is no reason to question plaintiffs counsels' decision to regard the $80 pre share price as having substantially realized their objectives in the litigation. Of course, if no agreement is reached as to an appropriate fee, I will review any fee petition in accordance with established precedent.

## IV.

For all the foregoing reasons, the motion to approve the proposed settlement is denied. IT IS SO ORDERED. Plaintiffs counsel are directed to advise the Court of their plan for further proceedings consistent with this opinion within 30 days of the date hereof.

---

6. Del. Ch., Consol. C.A. No. 14831, 1996 WL 633409, Allen, C. (Oct. 30, 1996).

7. *Id.* at 2.